**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Rigsby, et al.,<br><br>   Plaintiffs,<br><br>v.<br><br>GoDaddy Incorporated, et al.,<br><br>   Defendants. | No. CV-19-05710-PHX-MTL<br><br>**ORDER** |

Before the Court is the Motion to Dismiss Plaintiff's Third Amended Complaint filed by Defendants GoDaddy Inc., Inc., GoDaddy.com, LLC ("GoDaddy"), Go Daddy Operating Company, LLC, and Desert Newco, LLC (collectively, "Defendants"). (Doc. 89.) For the following reasons, Defendants' motion is granted; the Third Amended Complaint is dismissed with prejudice.[1]

**I.   BACKGROUND**

The following facts are derived from the Third Amended Complaint. (Doc. 86.) As a young man, Plaintiff Scott Rigsby suffered serious injuries when a tractor trailer collided with a pickup truck that itself had a trailer in tow. Mr. Rigsby was a passenger riding in the bed of that pickup. The impact ejected him. His body then became trapped by the pickup's trailer. He was dragged for about 324 feet. Mr. Rigsby spent the next 12 years in medical care and underwent 26 surgeries. Both of Mr. Rigsby's legs were ultimately amputated and

---

[1] Neither party has requested oral argument. Both parties have submitted legal memoranda and oral argument would not have aided the Court's decisional process. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998); *see also* LRCiv 7.2(f); Fed. R. Civ. P. 78(b).

he was provided prosthetics. (*Id.* ¶¶ 5–6.)

In the years following the accident, Mr. Rigsby defied expectations by training for and competing in Iron Man Triathlons. In 2007 he established the Scott Rigsby Foundation Inc., the other plaintiff in this case, for the purpose of raising money for persons with disabilities and promoting himself as a motivational speaker. Mr. Rigsby registered a domain name, www.scottrigsbyfoundation.org (the "Domain Name") with GoDaddy.com for the foundation around that time. Plaintiffs acknowledge that to register a website with GoDaddy, Mr. Rigsby necessarily consented to GoDaddy's Universal Terms of Service Agreement ("UTSA"). (*Id.* ¶ 30; at 32–75.)

Mr. Rigsby alleges that he "paid for the domain name through the first portion of 2018 through the GoDaddy.com website," believed to be operated by GoDaddy Operating Company, LLC. (*Id.* ¶ 21.) But, Mr. Rigsby alleges, there was a "glitch in GoDaddy.com's billing to Rigsby in the spring of 2018." (*Id.* ¶ 25.) Mr. Rigsby alleges that he "did not timely receive a bill for the cost of maintaining the domain name" and, as a result, he did not pay the bill. (*Id*. ¶ 26.) Having not paid, his rights to the Domain Name were forfeited. An unknown third party, which Plaintiffs refer to as the "hijacker," then purchased the Domain Name from GoDaddy once it became available. (*Id.* ¶ 27.) Mr. Rigsby attempted to work with GoDaddy to re-register the Domain Name before filing this lawsuit. (*Id.* ¶¶ 26–29.)

The website content now associated with the Domain Name promotes gambling. (*Id.* ¶ 41.) It provides users with "betting tips, football betting picks, insider betting information for a price, etc.—solicitations for activities with which The [Scott Rigsby] Foundation has no connection." (*Id*.) It "use[s] the name of The [Scott Rigsby] Foundation and the name of Scott Rigsby" without consent. (*Id*.) Plaintiffs allege that Defendants refuse "to terminate the use of the domain name scottrigsbyfoundation.org by the hijacker and . . . allow Scott Rigsby to re-register the domain name." (*Id.* ¶ 39.)

This case was initially filed in the United States District Court for the Northern District of Georgia. That court granted GoDaddy's Motion to Transfer Venue to the District

of Arizona. (Doc. 39.) Plaintiffs then filed their Second Amended Complaint in this Court, which Defendants moved to dismiss for failure to state a claim. (Docs. 59, 62.) At the conclusion of the parties' oral argument on the prior motion to dismiss, the Court granted Defendants' motion for failure to state a cognizable claim for relief or "well pled allegations to support any of those claims for relief." (Doc. 74 at 36.) It permitted Plaintiffs 21 days to file a Third Amended Complaint.

Plaintiff's Third Amended Complaint, now pending, asserts the same claims as did the Second Amended Complaint: for injunctive relief, a federal Lanham Act claim, invasion of privacy/publicity, trade libel, libel, declaratory relief, and violations of A.R.S. § 44-1522 (unlawful trade practices). (Doc. 86 at 19–27.) Defendants now move to dismiss the Third Amended Complaint for failure to state a claim and failure to correct the legal deficiencies that led to the dismissal of the Second Amended Complaint. (Doc. 89.) The motion is now fully briefed.[2] (Docs. 95, 98.)

## II. LEGAL STANDARD

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 545, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle it to relief." *Williamson v. Gen. Dynamics Corp.*, 208 F.3d 1144, 1149 (9th Cir. 2000).

---

[2] The Court admonishes counsel for both sides to review and comply with local rules in the future. This District's Local Rules of Civil Procedure permit up to 17 pages for any motion and response, and up to 11 pages for a reply. *See* LRCiv 7.2(e). Defendants submitted a 22-page motion (Doc. 89), and Plaintiffs submitted a 37-page response, without obtaining leave. (Doc. 95.) The Court reviewed both filings in full, although it was not obligated to do so.

The Court must accept material allegations in the Complaint as true and construe them in the light most favorable to Plaintiff. *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983). "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Review of a Rule 12(b)(6) motion is "limited to the content of the complaint." *North Star Int'l*, 720 F.2d at 581. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## III. DISCUSSION

Plaintiffs' Third Amended Complaint makes few substantive changes to the previously-dismissed Second Amended Complaint. The Court has identified only two new factual allegations.[3] First, Plaintiffs allege in the Third Amended Complaint that only GoDaddy—as opposed to the other defendants—has a valid contract (the UTSA) with Plaintiffs. *See, e.g.,* Doc. 86 ¶ 10 ("ONLY GoDaddy.com, LLC has a purported electronically signed 'contract' with Plaintiffs."); ¶ 31 ("Neither GoDaddy Inc., GoDaddy Operating Company, LLC nor Desert Newco, LLC had any contract with the Scott Rigsby Foundation ever—not when The Foundation first procured the domain name in 2007, and never subsequent to that date."); ¶ 34 ("GoDaddy Inc., GoDaddy Operating Company, and Desert Newco, LLC are in no way protected in their actions by the UTSA as they are not parties to it."). Second, the Third Amended Complaint alleges that the UTSA is periodically revised, and the most recent revision provides that domain names automatically renew by default. *See, e.g., id.* ¶ 48 ("Now the USTA provides for automatic renewal of domain names, a 180% [sic] change from the policy that allowed the hijacking."); ¶ 49 ([T]he aforementioned update to the USTA "100% acknowledges the validity of Plaintiffs' position from the inception of this case, and particularly the ongoing

---

[3] Plaintiffs' Third Amended Complaint does not comply with LRCiv 15.1 in that it does not "indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." LRCiv 15.1(a).

- 4 -

harm the previous policy the Defendants asserted to Rigsby in this very case caused."). As addressed below, neither of these allegations remedy the Second Amended Complaint's pleading deficiencies.

### A.     Lanham Act (Count II)

Plaintiffs assert a claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits the use of false or misleading designations of origin, descriptions, or representations in the sale of goods or services. They allege that Defendants "control" the Domain Name and are "knowingly providing" it "in a way in which deceives as to whether Scott Rigsby and his Foundation sponsor or approve of, or actually offer as a part of their commercial activities, online betting services." (Doc. 86 ¶ 52.) Plaintiffs also state that Defendants are "misrepresenting the characteristics of the Foundation's services," and that, but for Defendants' hosting activities, "the online betting service's hijacking activities could never be seen." (*Id.*) The Court agrees with Defendants that Plaintiffs have not stated a valid Lanham Act claim.

#### 1.     Anti-Cybersquatting Consumer Protection Act

First, Plaintiffs' Lanham Act claim fails because GoDaddy is exempt from liability as a domain name registrar. The Anti-Cybersquatting Consumer Protection Act ("ACPA") "was enacted in 1999 to protect consumers and to prevent misappropriation of trademarks by stopping conduct known as 'cybersquatting.'" *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1103 (S.D. Cal. 2012). The ACPA specifically limits liability for "domain name registrars" under the Lanham Act: a "domain name registrar, a domain name registry . . . shall not be liable for damages under this section for the registration or maintenance of a domain name for another absent a showing of bad faith intent to profit from such registration or maintenance of the domain name." 15 U.S.C. § 1114(2)(D)(iii). Because § 1114 sets forth remedies for the Lanham Act as a whole, Courts have interpreted this provision to limit liability for domain name registrars under § 1125(a) of the Lanham Act, as alleged here. *See, e.g., Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 737 F.3d 546, 551 (9th Cir. 2013) ("By its terms, Section 1114(2)(D)(iii), applies only to 'this

section,' meaning Section 1114. Section 1114, in turn, sets out remedies for the entire Lanham Act, including actions brought under Section 1125(a)."); *InvenTel Prod., LLC v. Li*, 406 F. Supp. 3d 396, 402 (D.N.J. 2019) ("Because Section 1114 provides the remedy for all Lanham Act violations, Section 1114(2)(D) limits liability for Section 1125 claims despite the 'under this section' phraseology.").

There can be no dispute that GoDaddy is a domain name registrar. *See e.g., Petroliam Nasional Berhad*, 737 F.3d at 548 ("GoDaddy.com, Inc. (GoDaddy) is the world's largest domain name registrar."); *Dent v. Lotto Sport Italia S.p.A.*, No. CV-17-00651-PHX-ROS, 2018 WL 11318189, at *1 (D. Ariz. Feb. 12, 2018) (GoDaddy is an "internet domain name registrar"). Plaintiffs do not appear to dispute as much, alleging that GoDaddy was the entity from which Plaintiffs "obtained" the Domain Name. (Doc. 86 ¶ 20.) Nonetheless, Plaintiffs argue that the ACPA cannot bar their § 1125(a) claim because the ACPA "has nothing to do with a Lanham Act claim made under 15 U.S.C. 1125(a), made as here, about false and misleading descriptions, representations, or designations about service." (Doc. 95 at 31.) This argument fails because, as noted, the ACPA clearly limits domain name registrars from liability under § 1125(a). *See* 15 U.S.C. § 1114(2)(D); *Petroliam Nasional Berhad*, 737 F.3d at 551. Accordingly, the Court finds that GoDaddy is immune from liability under the Lanham Act, § 1125(a), "absent a showing of bad faith intent to profit from such registration or maintenance of the domain name." 15 U.S.C. § 1114(2)(D)(iii).

Plaintiffs make no allegations that GoDaddy acted in such bad faith. They state that Defendants "are knowingly providing the use of the domain name in a way in which deceives" and are "misrepresenting the characteristics of the Foundation's services." (Doc. 86 ¶ 52.) This is not the same as a bad faith intent to profit. Indeed, as other courts have recognized, "failing to prevent its computer system from registering the [Domain Name] does not constitute 'bad faith.'" *InvenTel Prod., LLC*, 406 F. Supp. 3d at 402. Plaintiffs provide "no basis for the proposition that GoDaddy must predict which URLs will be used for infringement purposes and proactively stop them from being registered." *Id*. at 402–03.

1    Accordingly, Plaintiffs' Lanham Act claim against GoDaddy will be dismissed.

### 2. "Use" in Commerce

Further, Plaintiffs' Lanham Act claim fails against all Defendants because the Third Amended Complaint does not adequately allege that Defendants' actions constitute a "use in commerce." 15 U.S.C. § 1125(a)(1). To state a claim under § 1125(a), a plaintiff must show that a defendant is using, in commerce, false or misleading designations of origin, descriptions, or representations in the sale of goods or services. *See Brookfield Communs., Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). To use in commerce means that a mark is "placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto. . ." and the "goods are sold or transported in commerce," or on services "when it is used or displayed in the sale or advertising of services and the services are rendered in commerce." 15 U.S.C. § 1127.

Nowhere does the Third Amended Complaint allege that Defendants have "used" Plaintiffs' marks in commerce. Indeed, numerous courts have found that mere control of a domain name does not amount to "use" under the Lanham Act. *See, e.g., Petroliam Nasional Berhad v. GoDaddy.com, Inc.*, 897 F. Supp. 2d 856, 866 (N.D. Cal. 2012), aff'd, 737 F.3d 546 (9th Cir. 2013) ("The forwarding of the Disputed Domains does not amount to 'use' of the domain names. Domain name forwarding is a standard service that has been provided by Go Daddy and virtually all registrars for more than a decade."); *Lockheed Martin Corp. v. Network Sols., Inc.*, 985 F. Supp. 949, 957–59 (C.D. Cal. 1997), aff'd, 194 F.3d 980 (9th Cir. 1999) (finding that domain name registrar did not "use" the plaintiff's mark in commerce; "something more than the registration of the name is required before the use of a domain name is infringing").

Absent any other allegations as to how Defendants "used" Plaintiffs' mark, the Lanham Act claim must fail. Plaintiffs' additions to the Third Amended Complaint do not resolve the previously-dismissed Second Amended Complaint's pleading deficiencies. The UTSA has no bearing on the fact that Defendants are statutorily barred from liability for

Plaintiffs' Lanham Act claim, nor that Plaintiffs have failed to allege that Defendants "use" their marks in commerce. Count II of Plaintiffs' Third Amended Complaint is dismissed.[4]

### B. State Law Claims (Counts III, IV, V, VII)

Plaintiffs also bring claims of invasion of privacy/publicity, trade libel, libel,[5] and violations of A.R.S. § 44-1522, all under state law (Counts III, IV, V, VII). Defendants argue that those claims should be dismissed, first, because the Communications Decency Act ("CDA"), 47 U.S.C. § 230, shields them from liability. Plaintiffs state that this argument "will have to be sorted out in discovery." (Doc. 95 at 25.) The Court agrees that Defendants are statutorily barred from liability for Plaintiffs' state law claims on the face of the Third Amended Complaint.

The CDA shields providers and users of interactive computer services from liability for "information provided by another information content provider." 47 U.S.C. § 230(c)(1). In general, § 230(c)(1) "protects websites from liability [under state or local law] for material posted on the[ir] website by someone else." *Doe v. Internet Brands, Inc.*, 824 F.3d 846, 850 (9th Cir. 2016). Section 230 further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."[6] 47 U.S.C. § 230(e)(3). The "majority of federal circuits have interpreted

---

[4] Defendants also argue that the Lanham Act claim fails because Plaintiffs do not allege that they "have protectable marks at all." (Doc. 89 at 22.) Based on the foregoing, the Court need not reach this argument.

[5] The Third Amended Complaint does not specifically identify under which state's law Plaintiffs bring these claims. (Doc. 86 at 23–26.) Defendants appear to assume that the claims are brought under Arizona law (Doc. 89 at 26)—a reasonable interpretation, given the "long-recognized principle that federal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Nonetheless, Plaintiffs' response to the motion to dismiss indicates that the claims are brought under Georgia law. (Doc. 95 at 21.) As discussed below, these state law claims are barred by the Communications Decency Act, 47 U.S.C. § 230, regardless of whether brought under Georgia or Arizona law.

[6] Section 230(e) excludes "intellectual property" claims. The Ninth Circuit has "construe[d] the term 'intellectual property' to mean 'federal intellectual property'" in this context. *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1119 (9th Cir. 2007). Accordingly, the Court does not examine this statute in the context of Plaintiffs' Lanham Act claim.

- 8 -

the CDA to establish broad 'federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.'" *Perfect 10, Inc.*, 488 F.3d at 1118 (citing *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)). Section 230 immunity was created because "[i]t would be impossible for service providers to screen each of their millions of postings for possible problems." *Zeran v. America Online, Inc.*, 129 F.3d 327, 331 (4th Cir. 1997).

Numerous courts have confirmed GoDaddy's immunity under the CDA. *See, e.g., Kruska v. Perverted Just. Found. Inc.*, No. CV08-0054-PHX-SMM, 2008 WL 2705377, at *2 (D. Ariz. July 9, 2008) (dismissing state law defamation, intentional infliction of emotional distress, and negligence claims based on § 230 immunity); *Franklin v. X Gear 101, LLC*, No. 17-CIV-6452-GBD-GWG, 2018 WL 4103492, at *8 (S.D.N.Y. Aug. 28, 2018) (dismissing state law claims for unjust enrichment and conversion against GoDaddy as "barred by the Communications Decency Act, 47 U.S.C. § 230(c)(1), which provides broad-based immunity to defendants who are providers of interactive computer services from certain state law claims"); *Laake v. Dirty World LLC*, No. CV-19-5444-PHX-DMF, 2020 WL 1091217, at *3 (D. Ariz. Jan. 8, 2020), report and recommendation adopted, No. CV-19-05444-PHX-DMF, 2020 WL 1083830 (D. Ariz. Mar. 6, 2020) ("Plaintiff fails to state a claim against GoDaddy Inc. upon which relief may be granted because GoDaddy Inc. is immunized from the libel claim in the proposed First Amended Complaint pursuant to the Communications Decency Act.").

Section 230 immunity "has proved nearly limitless, protecting providers from defamation, invasion of privacy, misappropriation of right of publicity, general negligence, and intentional infliction of emotional distress, among other claims." *Kruska*, 2008 WL 2705377, at *2 (citations omitted). Here, Plaintiffs' state law claims rely on Defendants' provision of domain name registration services. The invasion of privacy/publicity claim, for example, states, "Defendants have used Scott Rigsby's name and the name of his Foundation, which of course includes his name, without his consent. . ." (Doc. 86 ¶ 56.) Plaintiffs' trade libel claim states, "[s]ince the hijack of the site, daily, Defendants have

published false and defamatory statements concerning the Foundation's activities in the gambling world . . ." (*Id.* ¶ 58.) And the libel claim also states that Defendants have published false and defamatory statements "[s]ince the hijack of the site." (*Id.* ¶ 60.) At no point do Plaintiffs assert that Defendants independently publish or generate the website content at issue. Accordingly, Plaintiffs' state law claims for invasion of privacy/publicity, trade libel, and libel (Counts III, IV, V) are statutorily barred.

Plaintiffs also allege violations of A.R.S. § 44-1522, the Arizona Consumer Fraud Act. The elements of a private claim under this statute are "a false promise or misrepresentation, made in connection with the sale or advertisement of merchandise, and the plaintiff's consequent and proximate injury from reliance on such a misrepresentation." *Ferren v. Westmed Inc.*, No. CV-19-00598-TUC-DCB, 2021 WL 2012654, at *4 (D. Ariz. May 20, 2021). The Third Amended Complaint alleges, as the apparent sole basis for this claim, that Defendants have caused Plaintiffs "crushing damages," and that Plaintiffs are "entitled to a judgment against Defendants in that amount."[7] (Doc. 86 at 27 ¶ 51.)

The Ninth Circuit Court of Appeals has recognized that, for purposes of § 230 immunity, "what matters is not the name of the cause of action—defamation versus negligence versus intentional infliction of emotional distress—what matters is whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker of content provided by another.'" *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1101–02 (9th Cir. 2009), as amended (Sept. 28, 2009). Put another way, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' If it does, section 230(c)(1) precludes liability." *Id.* at 1102. In this case, the Court "need not perform any intellectual gymnastics" to conclude that Plaintiffs' claim under the Arizona Consumer Fraud Act relies on the allegation that Defendants published false information. *Id.*; *see also* A.R.S. § 44-1522. Accordingly, this

---

[7] Plaintiffs also reference, in passing, A.R.S. § 44-6561, which permits the Attorney General to investigate and "take appropriate action" in the context of unlawful practices under § 44-1522.

- 10 -

claim (Count VII), too, is dismissed pursuant to the CDA.[8]

### C. Declaratory Judgment (Count VI)

Plaintiffs also seek a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that the UTSA is unenforceable between Plaintiffs and GoDaddy "given the failure to comply with the electronic signature requirements of 15 U.S.C. [§] 7001 and A.R.S. [§] 55-7001 [sic]." (Doc. 86 ¶ 62.) The Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001 ("E-SIGN Act"), provides:

> [W]ith respect to any transaction in or affecting interstate or foreign commerce—
> (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and
> (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

15 U.S.C. § 7001(a). The Third Amended Complaint does not contain any well-pleaded allegations as to the E-SIGN Act. Further, "[n]o provision of the [E-SIGN Act], nor any case interpreting it, recognizes such a private right of action based on the electronic form of a document." *Yoshimura v. Takahashi*, 446 F. Supp. 3d 644, 652 (D. Haw. 2020) (citation omitted). Accordingly, the E-SIGN Act does not provide a basis for the declaratory judgment Plaintiffs seek.

Plaintiffs also invoke A.R.S. § "55-7001." (Doc. 86 ¶ 62.) The Arizona Revised Statutes do not contain a Title 55. Defendants interpret the Third Amended Complaint to invoke A.R.S. § 44-7001, *et seq.*, the Arizona Electronic Transactions Act, under which a "contract formed by an electronic record cannot be denied legal effect and enforceability solely because an electronic record was used in its formation." A.R.S. § 44-7007(B).

---

[8] As before, Plaintiffs' new allegations in the Third Amended Complaint in no way remedy the pleading deficiencies of the Second Amended Complaint as to Plaintiffs' state law claims.

1  Plaintiffs have not provided authority indicating that the Arizona Electronic Transactions
2  Act permits a private right of action. They also do not include well-pleaded allegations of
3  purported violations of this statute. The Arizona Electronic Transactions Act is also not a
4  basis for Plaintiffs' claim for declaratory relief.

Plaintiffs also seek a declaratory judgment that the "Scott Rigsby Foundation Inc. is the proper owner of the domain name scottrigsbyfoundation.org, so that Defendants must allow Plaintiffs to use that domain name." (Doc. 86 ¶ 64.) The Declaratory Judgment Act "only creates a remedy," not a cause of action. *Stock W., Inc. v. Confederated Tribes of the Colville Rsrv.*, 873 F.2d 1221, 1225 (9th Cir. 1989). Because Plaintiffs have otherwise failed to assert that they are entitled to this relief, the Court grants Defendants' motion to dismiss Plaintiffs' request for a declaratory judgment (Count VI).

### D. Injunctive Relief (Count I)

The Third Amended Complaint also seeks injunctive relief "forbidding Defendants until further order of the Court from letting the hijacker or anyone else other than The Scott Rigsby Foundation, Inc. to register the domain name scottrigsbyfoundation.org." (Doc. 86 ¶ 46.) It is "well-settled that a claim for 'injunctive relief,' standing alone, is not a cause of action." *Adelman v. Rheem Mfg. Co.*, No. 2:15-CV-00190 JWS, 2015 WL 4874412, at *8 (D. Ariz. Aug. 14, 2015). As Plaintiffs have failed to state any other valid claims for relief, this claim, too, is dismissed.[9]

### E. Leave to Amend

Rule 15(a)(2) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). Exceptions to the general policy of granting leave exist "where the amendment:

---

[9] Plaintiffs also argue in their response brief that Defendants' motion should be denied because it includes a declaration from Jessica Hayden, a Business Operations Manager for GoDaddy. (Doc. 89-1; Doc. 95 at 3.) Plaintiffs rely on Rule 12(d), which provides that, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Because the Court does not consider Ms. Hayden's declaration in granting Defendants' motion to dismiss, it does not address this argument.

(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Here, the Court finds that amendment would both produce an undue delay and would be futile.

As to undue delay, this case has been pending since August 25, 2019.[10] (Doc. 1.) Plaintiffs have already amended the complaint three times. Also, relevant to the "delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). Here, the Court dismissed Plaintiffs' Second Amended Complaint, stating it did not plead sufficient allegations for "any" of the claims for relief. (Doc. 74 at 3.) Plaintiffs then filed a Third Amended Complaint containing the exact same claims for relief. (Doc. 59 at 17–25; Doc. 86 at 19–27.) The only additional factual allegations in the Third Amended Complaint are regarding the USTA, none of which remedy the various pleading deficiencies of the Second Amended Complaint. There is no conceivable reason that Plaintiffs would know additional facts or theories to raise in a Fourth Amended Complaint that they have not raised in the first four filings. Relatedly, given Plaintiffs' opportunities to amend the complaint, the Court finds that further amendment would be futile. The Third Amended Complaint will be dismissed with prejudice.

**IV.   CONCLUSION**

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's Third Amended Complaint With Prejudice (Doc. 89) is **granted**. The Third Amended Complaint is dismissed with prejudice.

///

///

///

///

---

[10] The case was transferred to this District on December 2, 2020. (Doc. 53.)

**IT IS FURTHER ORDERED** directing the Clerk of the Court to terminate this case and enter judgment accordingly.

Dated this 14th day of June, 2021.

*Michael T. Liburdi*
Michael T. Liburdi
United States District Judge